(6 Misc. Rep. 20.)

### VAIL v. BROADWAY R. CO. OF BROOKLYN.

(City Court of Brooklyn, General Term. November 27, 1893.)

1. CARRIERS—INJURY TO PASSENGERS.

Plaintiff, while a passenger on defendant's horse car, was thrown from the platform, where he was standing, by the jar of the car as it crossed a switch, resulting from the misplacement of the tongue of the switch. There was evidence that the switch was set by a small boy for the conductor, and that the car was crossing the switch at a high rate of speed, in violation of a rule of defendant; that the rails at the switch were loose, and not properly spiked; that the tongue in the switch was worn down; and that these defects contributed to the accident. This evidence as to the boy's setting the switch, as to the speed of the car, and as to the imperfect condition of the rail and tongue of the switch was contradicted. *Held*, that it was proper to submit the case to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Act 1850, (General Railroad Act,) § 46, providing that a railroad company shall not be liable for injury to a passenger while on a car platform, "or on any baggage, wood or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place, inside of its passenger cars, then in the train," applies only to railroads where the motive power is steam, or some power other than horses.

**3. DAMAGES—PERSONAL INJURIES.**

A verdict of $7,500 is not excessive, though the interest thereon may exceed plaintiff's earnings, where it appears that he was in a hospital under surgical treatment for three months, as a result of the injuries sustained, and that after that period he continued to be attended by a surgeon, and suffered great pain; that his leg is permanently shortened, and that he will always be lame, and that he cannot stand on his feet all day at any employment.

Appeal from trial term.

Action by Abel C. Vail against the Broadway Railroad Company of Brooklyn. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN WYCK and OSBORNE, JJ.

Moore & Wallace, for appellant.

Thos. E. Pearsall, for respondent.

OSBORNE, J. Plaintiff brought this action to recover damages for injuries alleged to have been sustained by him through the negligence of the defendant's servants. He obtained a verdict of the jury in his favor, and from the judgment entered thereon, and the order denying a motion for a new trial, this appeal is taken.

It appeared from the evidence in the case that on the 20th of October, 1892, plaintiff took passage on one of defendant's horse cars near the corner of Fulton street and Alabama avenue, with a view of going to his residence. He was smoking a cigar at the time, and he got on the front platform of the car, and there paid his fare to the conductor. At and just beyond the point where plaintiff boarded defendant's car there is a network of rails and crossings and switches extending some considerable distance. As the car approached one of these switches or cross-overs, the tongue of the switch being misplaced, the car was suddenly jerked on to the cross-over, by reason of which plaintiff was thrown from the front platform to the street, and thereby received the injuries complained of. There was testimony on the part of the plaintiff that the setting of the switch in question was done by a small boy, (the witness Brown,) who testified that he got off the car, and pushed the tongue of the switch to one side with his hand; that it was the custom of the boys to so tend switch for the drivers of the cars in that neighborhood, and that they usually received a penny from the conductor for their trouble. Plaintiff's evidence further tended to show that, while the car was crossing this switch, it was going at a high rate of speed, which was in direct violation of one of the rules of the company which required the drivers to walk their horses while crossing a switch, and that the car, after striking the switch, went some 10 feet on to the cross-over before it was stopped. There was further testimony on the part of the plaintiff seeking to show that the rails at the switch were loose, that they were not properly spiked, that the tongue of the switch was worn down, and that these alleged defects contributed to cause the car to be thrown to the wrong track. This testimony, however, as to the boy's turning the switch, as to the rate of speed

of the car, and as to the alleged imperfect condition of the rail and tongue of the switch was denied by witnesses on the part of the defendant.

It is very plain to us, from a careful perusal of all the testimony in this case, that the question of the negligence of the defendant, and of the lack of contributory negligence on the part of the plaintiff, was a question for the jury. Enough was made out by the plaintiff on his side, uncontradicted, to entitle him to a submission of his case to the jury, and it would have been error to have dismissed the complaint at the close of the plaintiff's case. After the presentation of the defendant's evidence, there was a sharp issue presented between the parties on many important points in the case, and it was essentially the province of the jury to determine those disputed points. Accordingly, we think that the motion to dismiss the complaint at the close of the plaintiff's case, and which was renewed upon the whole case, was properly denied.

The learned counsel for the defendant further claims that, under the statutes in pursuance of which defendant was incorporated, it was not liable for injuries sustained by the plaintiff while riding on the front platform of one of its cars. Defendant proved on the trial that it was organized under chapter 303 of the Laws of 1858, and that section 6 of said chapter 303 provided that "it shall be lawful for said Augustus Ivins solely or with his associates to organize under an act of the legislature entitled 'An act to authorize the formation of railroad companies and to regulate the same,' passed April 2, 1850, and in the event of such organization, all the provisions of said last-mentioned act, except the number of persons designated in the first section thereof, shall apply to the said grantee and his associates, also except the provisions of section 27 of said act." Section 46 of the act of 1850, commonly known as the "General Railroad Act," reads as follows: "Injuries to passengers on platforms, etc. In case any passenger on any railroad shall be injured while on the platform of a car, or on any baggage, wood or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place, inside of its passenger cars, then in the train, such company shall not be liable for the injury; provided said company at the time furnished room inside its passenger cars sufficient for the proper accommodation of the passengers." Evidence was offered that there was ample room inside of the car from which plaintiff was thrown, there being but two passengers in it at the time of the accident; and it was also shown on the part of the defendant that certain printed regulations were posted in a conspicuous place inside of the car on which plaintiff was a passenger, and that among these regulations was one to the effect that passengers were not allowed to ride on the front platform with the driver, and that any passenger breaking this rule did so at his own risk. The learned counsel for the defendant earnestly and ably contends that, the defendant having complied with the provisions of this section of the general railroad act, it was not responsible for

the injuries which the plaintiff sustained while riding on the platform of the car. After a very careful examination of this question, we have come to the conclusion that the defendant's contention cannot be sustained. It seems to us, after perusing these provisions of the general railroad act, that the section in question is not applicable to a horse railroad. As was said by the court of appeals in Re Washington St. Asylum & P. R. Co., 115 N. Y. 447, 22 N. E. Rep. 356: "Undoubtedly there are some provisions in the act which can only be applied to railroads where the motive power is steam, or some other power than horses; but that furnishes no argument against the application of any of its other sections to horse railroads." We are left, therefore, to determine, from the general reading of the section and the context, whether the legislature intended that it should apply exclusively to steam cars, or to horse cars as well. Looking at the section in question, it seems to us very plain that it is intended only to "apply to railroads where the motive power is steam, or some other power than horses." Reference is made to a passenger riding on the platform of a car, or on any baggage, wood, or freight car, and the printed regulations are to be posted "in a conspicuous place inside of its passenger cars then in the train." This language and these provisions seem to us clearly to indicate that this section was not intended to apply to horse cars. We cannot overlook the fact that, in our cities, horse cars are crowded night and morning from front to rear, that conductors not only carry passengers on the platforms, without objection or remonstrance, but also collect fares therefrom. It is further a well-known fact that smoking is allowed by the street-railroad companies on the front platforms, and in this case plaintiff put in evidence rule 10 of defendant's book of rules and regulations for its employes, conductors, and drivers, which is as follows: "Smoking. Smoking on the closed cars is prohibited, except on the front platform." It certainly would, in our opinion, be most inequitable to permit this defendant to shield itself from any of its liabilities as a common carrier behind the provisions of the above-quoted section 46 of the general railroad act, while at the same time it expressly authorizes its drivers and conductors to permit smoking on the front platforms of its cars, and only on its front platforms; to collect fares from its passengers for riding thereon; in short, to enjoy all the benefits of its franchises, and to relieve it from all of its obligations as a carrier of passengers in that regard.

The verdict for the plaintiff in this case was for $7,500, and the learned counsel for the defendant has very strenuously contended that the amount of damages is excessive, and that this court should exercise the power vested in it, and reduce the verdict to what the defendant regards to be a more reasonable sum; and we are referred to Morris v. Railroad Co., 68 Hun, 39, 22 N. Y. Supp. 666, as authority for such action on our part. We are unable to follow the conclusions adopted by the majority of the court in that case, and they seem to us to be in conflict with many other au-

thorities on the subject. It has been repeatedly stated that the assessment of damages by a jury is one of the most useful attributes of the jury system, and it has come to be an almost universal rule that courts will not interfere with the verdict of a jury, unless they can perceive that it is the result of passion or prejudice, or reached by an utter disregard of the principles of law that the court has laid down for the jury's guidance in determining the case. The verdict in this case seems to us to be open to no one of these exceptions. It was shown that the injuries which plaintiff sustained were painful, severe, and lasting. He was confined to the hospital under surgical treatment for a period of three months, and he is still attended by his surgeon, and still suffers great pain. His leg is permanently shortened. He will always be lame, and, according to the medical testimony, will not be able to stand on his feet all day at any employment, and could really earn his living to better advantage with an artificial foot. In the face of these facts, it cannot be said that the interest on the verdict is more than plaintiff's earnings, and therefore the verdict is excessive. To so hold would be to ignore any compensation to the plaintiff for his pain and suffering and his being permanently crippled. We are of the opinion that the verdict was not excessive, under these circumstances. Even if we thought differently, however, and entertained an opinion that the verdict was a larger one than we ourselves would have awarded if sitting as jurors, that would afford no ground for disturbing the verdict, there being nothing to show that the jury were misled in any way, or were actuated by any improper motive or impulse. None of the other exceptions in the case are tenable, nor do they seem to call for any special discussion. We are accordingly of the opinion that the judgment and order appealed from should be affirmed, with costs.