swer intelligently. We will examine what was brought out by such questions in one or two instances, as an illustration of the usefulness of such evidence. At folios 301 to 304, the witness Crawly, who lived in the same house with her, and saw her frequently, testified that he "noticed she was a healthy woman, apparently." "Saw her doing her work  *  *  *  in the household,  *  *  *  do laundry work, household work,  *  *  *  carry breakfast to her husband,  *  .  *  *  going about. She has always had quite a rosy complexion; that is, before this accident.  *  *  *  Have not seen any rosy complexion on her since the 16th of September, 1892." At folios 304 to 307, the witness Hunt testified that he saw her daily for a time, before and after the accident. This question was put to him: "Q. Down to the 16th of September, 1892, what was her general appearance as to healthfulness? A. Good. The complexion which Mrs. Cannon usually had was strong and hearty. I have seen her since. I have seen a difference in her as to color of face, I mean, a big change,—pale, delicate, unhealthy, as to the looks of her face." At folios 307 to 310, the witness Hannon, in response to a similar question as to her appearance, testified that, before the accident, she was "a stout, healthy woman, with a healthy color," and, after the accident, "not near so stout," and "her color is almost gone." We think this evidence was both competent and material. Lawson, Exp. Ev. pp. 470–473; Hewlett v. Wood, 55 N. Y. 634. Judgment and order affirmed, with costs.

---

(9 Misc. Rep. 275.)

CASSIDY v. ATLANTIC AVE. R. CO.

(City Court of Brooklyn, General Term. June 25, 1894.)

CARRIERS—INJURY TO PASSENGER—PROOF OF NEGLIGENCE.
    Where a passenger is injured by falling from the front platform of defendant's street car, he cannot recover damages merely on proof that the driver whipped his horses, and that they made a sudden "plunge," which caused the car to "lurch."

Appeal from trial term.

Action by John Cassidy against the Atlantic Avenue Railroad Company for personal injuries. There was a judgment in favor of plaintiff, and defendant appeals. Reversed.

Argued before CLEMENT, C. J., and VAN WYCK, J.

Tracy, Boardman & Platt, for appellant.

Thos. E. Pearsall, for respondent.

CLEMENT, C. J. This action was brought to recover damages for personal injuries sustained by the plaintiff while a passenger upon the front platform of a closed car on the Hamilton avenue line of defendant. The verdict was for the plaintiff for the sum of $10,000; and from the judgment entered thereon, and the order denying a new trial, this appeal is taken. After a careful consideration of the testimony, we are satisfied that the recovery in this case should be set aside. While it is not negligence, as matter of law,

for a passenger to ride upon the front platform of a street-railway car, yet a person who voluntarily so rides assumes the usual and ordinary dangers of his position. He is compelled to stand, and is not protected from the jolts and sudden movements of the car, except by the use of his eyes and hands. It is a matter of every-day life to see passengers riding on the front platforms of our closed street cars, and it is matter of common sense that there is more danger in riding thereon than inside the car, or on the rear platform. The driver of a horse car has to use his whip, and it is not negligence for him so to do, any more than it would be on the part of a driver of any other vehicle. The passenger on the front platform knows that the driver uses the whip, and is aware of the usual effect upon the horse. The animal, when the whip is used, starts suddenly, and moves more rapidly. Such is the intention of the driver when he applies the whip. In this case the driver of the car struck his horses with a whip. What happened is described by plaintiff as follows:

"The driver struck the horses with the whip. The horses made a plunge, and he pulled them back and threw on the brake. I got shook over against the dashboard, and out from the car, on the street. When the driver struck the horses with the whip, the horses made a jump, and the car gave a lurch. It threw me over again the dashboard. He struck one of the horses on the right side. The effect of that blow on the horse was that the horses made a plunge. The horse that was struck made a plunge. Q. Do you mean to say that both horses made a plunge, or the horse that was struck made a plunge? A. The horse that was struck made a plunge. Q. He struck the horse a single blow,—one horse a single blow,—and then he applied the brake? A. The horse made a lurch, and he threw on the brake. Q. What you mean by that is, the lurch, you mean to say, that the starting of the horse quickened the pace of the horse momentarily? A. Yes. When I got the shock, the car lurched. It loosened my hold from the brass rod,—the lurch the car gave. Q. As he struck the horse, it was a simple spring of the horse forward, was it? A. Yes; the horse plunged forward. Q. He jumped forward? A. Yes; he made a spring forward with his fore heels. Q. The horse sprang forward? A. Yes. Q. As a horse naturally would when struck with a whip, wasn't it? A. Yes. Q. There was nothing unusual or unnatural in the action of the horse when struck with the whip, was there, except that he went forward more rapidly? A. He made a plunge when he got the blow of the whip. Q. What do you mean by a plunge? A. A jump. Q. He jumped forward? A. He jumped forward."

The foregoing testimony is about all there is in the case to uphold the recovery of the plaintiff. The witness Hanley noticed a lurch of the car, but, on cross-examination, admitted that he was not paying attention. The case rests on the testimony of the plaintiff and Hanley, who do not testify that anything happened except that the driver whipped up his horses, and increased the speed of the car. There was no evidence that the application of the brake in any wise was the cause of plaintiff's injury. It was the duty of the driver to apply the brake when he saw that the plaintiff was about to fall from the car.

The cases cited by the counsel for the respondent are not in point. In the case of Nolan v. Railroad Co., 87 N. Y. 63, the driver was a witness for plaintiff, and testified that the brake chains were out of order, and that the horses were skittish, and would not take the whip; and yet Judge Finch there said: "It must be freely con-

fessed that the evidence, taken altogether, is very unsatisfactory." In the cases of Murray v. Railroad Co. (this court) 7 N. Y. Supp. 900, and Maguire v. Railroad Co., 115 Mass. 239, the cars were running rapidly on a down grade, and the drivers suddenly applied their brakes, without any necessary reason. These cases were on the border line, and had special points which controlled the result. In Medler v. Railroad Co. (this court) 12 N. Y. Supp. 930 (affirmed by court of appeals, without opinion, 126 N. Y. 669, 27 N. E. 854), the plaintiff, when injured, was not riding on the front platform of a closed car, but was getting ready to alight from the side step of an open car, moving slowly, when it was suddenly started. A passenger voluntarily riding upon the front platform of a closed street car has a right to assume that the car will not be rapidly driven over an open switch, for the reason that a sudden turn of the car would result; and therefore the cases cited of Vail v. Railroad Co. (this court) 6 Misc. Rep. 20, 26 N. Y. Supp. 59, Ginna v. Railroad Co., 67 N. Y. 596, and Farrell v. Railroad Co. (Sup.) 4 N. Y. Supp. 597, are not in point. In the case of Weymouth v. Railroad Co. (Super. N. Y.) 22 N. Y. Supp. 1047 (affirmed by court of appeals, June 5, 1894, 37 N. E. ——), the plaintiff went from the inside to the front platform for the purpose of getting off the car, and the driver, when slowing up at his request, suddenly released the brake, and started the car, as in the Case of Medler, supra. The reasoning of the court of appeals in the case of Hayes v. Railroad Co., 97 N. Y. 259, applies to the facts of this case. The headnote is as follows:

"To maintain an action to recover damages for negligence, plaintiff must prove facts warranting an inference of negligence on the part of the defendant. He may not recover upon facts as consistent with care and prudence as with the opposite."

In that case the facts were much stronger in favor of the plaintiff than in the case now before us, as Hayes had stepped off the front platform to allow passengers to enter the car, and was in the act of stepping upon the platform again, when the car, as he testified, "gave a sudden movement, and pulled up, and I got thrown out sideways." Judge Finch, in that case, said that there could not be a recovery on testimony simply showing "a sudden movement" of the car. In this case the use of the words "plunged," "jumped," and "lurched," by the plaintiff, an interested party, does not show that. there was any unusual or unexpected movement of the car. A recovery in an action for negligence must be founded on something more than the use of forcible language to describe an act. The judgment and order denying new trial must be reversed, and a new trial granted; costs to appellant to abide the event.