HENRY A. SIAS and IDA A. BAUN, as Administrators, etc., of CHARLES H. McKEE, Deceased, Appellants, v. ROCHESTER RAILROAD COMPANY, Respondent.

*Personal injuries — passenger unnecessarily standing on the platform and leaning over the side of a car — questions of negligence for the jury — death later than a year and a day after the accident.*

In an action brought to recover damages caused by the alleged negligence of the defendant, a street railway corporation, it appeared that the plaintiffs' intestate was riding in a car upon the defendant's road about ten o'clock at night, and that although the car was not full and the night was dark, he, of his own motion, went out upon the front platform of the car to look about, the conductor, who was then upon the front platform, apparently offering no objection to the presence of the intestate, who, after having been upon the platform a minute or more, leaned over beyond the side of the car and was struck by a tree near the line, causing injuries from which he died more than two years later. It appeared that the tree in question came within five or six inches of the car, and that part of its body had been cut away to allow cars to pass.

Upon an appeal from a nonsuit directed by the court,

*Held*, that the questions of negligence and contributory negligence should have been submitted to the jury. HARDIN, P. J., dissenting.

*It seems*, that the fact that the injured person died more than a year and a day after the accident occurred would not prevent a recovery.

APPEAL by the plaintiffs, Henry H. Sias and another, as administrators, etc., of Charles H. McKee, deceased, from a judgment of

the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Jefferson on the 14th day of June, 1895, upon a nonsuit granted by the court after a trial at the Jefferson Circuit before the court and a jury, and also from an order bearing date the 9th day of May, 1895, and entered in said clerk's office, denying the plaintiffs' motion for a new trial made upon the minutes.

The complaint alleges that the defendant maintains and operates an electric street railway on Lake avenue and elsewhere in the city of Rochester, for the conveyance of passengers for hire; and that on the 4th of September, 1892, the plaintiffs' intestate boarded one of the defendant's cars near Ontario Beach about ten o'clock P. M., and paid to the conductor of said car the fifteen cents fare for carrying the plaintiffs' intestate from Ontario Beach over defendant's railway to the Whitcomb House in the city of Rochester; that while the intestate was being so carried as a passenger, " and while standing on the platform of said car, with the knowledge and consent of the defendant and of the conductor of said car, he was struck on the head by a tree standing adjacent to the railroad track of the defendant and thrown upon the ground, stunned and rendered senseless until the following day, and suffered severe injuries from such blow and fall, chiefly to his head; " and that the injuries thus incurred were so severe as to cause intestate's insanity and his death, which ensued on the 14th day of December, 1894. It was claimed in behalf of the plaintiffs that it was for the jury to determine whether the injuries occurred from the wrongful act of the defendant, although death ensued more than one year and a day after the injuries were inflicted. (See *Schlichting* v. *Wintgen*, 25 Hun, 626.)

*Mullin, Griffin & Walker* and *D. G. Griffin*, for the appellants.

*Bacon, Briggs, Beckley & Bissell* and *Marsenus H. Briggs*, for the respondent.

HARDIN, P. J. :

After the intestate had purchased a ticket and entered the car of the defendant, it was in duty bound to observe care in his transportation from Ontario Beach to the city of Rochester.

In *Clark* v. *Eighth Avenue Railroad Company* (36 N. Y. 137), GROVER, J., said : " The law requires from those so engaged the exercise of such care on their part, and of their servants, as will insure the safe carriage of their passengers so far as their safety depends upon the diligence and care of those engaged in such carriage, and makes them responsible for any injury sustained from the omission of such care and diligence."

The witness Bamber testifies that he took a seat about the middle of the car on the right-hand side, and he adds : " Four fellows together on the other side laughing, talking, having a good time ; pretty soon a couple of them got up, walked up front of the car ; as soon as they had passed out of the door I didn't see any more of them ; and just about a second, or minute or two, I heard thud and knew some one had been hit then by the side of the car, up against a tree was there ; I jumped up, dropped off the rear end of the car, went back, saw him lying down, went and rung Dr. Sibley's door bell ; * * * This accident occurred on Lake avenue in front, not quite in front, of the doctor's house ; * * * the car was an open trailer, what they call an open side ; * * * when I saw these two men stand up and go out on the platform of the trailer I observed the conductor standing on the platform ; I could see him through the open door ; these men went out on the front platform of the rear car of the train ; the conductor was on that platform when they went out ; the car was not jammed full ; there were five or six single seats ; * * * these two men passed out throughout the door on to the platform ; the conductor stood there ; I was sitting on the fifth seat back from the front of the car." This witness testified that he had seen the big tree before, and he added that " about eight feet from the ground there is a kind of place notched out so the eaves of the car could slip by ; I should judge it was cut out so as to let the car pass, so as to let the edge of the roof slip by ; the roof extended out over the lower part of the car about three inches ; * * * I should judge the tree came somewheres between four and six inches from the car ; * * * this tree, which was notched, was about a foot and a half through ; 't was an elm tree."

The witness Plant, who was riding on the car in question at the time the deceased was hurt, testified, viz. : " Noticed there was a

party of three or four on the same car, seeming to be together, opposite me, and noticed they were having a good time; one of them got up and walked to the front end of the platform, and I didn't pay any more attention to him; the next thing I heard was a rap on the side of the car and the bell rang and the car stopped, and I got off and some of the men there picked him up and brought him into the doctor's office; from the time I saw the man go forward on to the platform until I heard the rap on the car was not very long; it was a minute and a half or two minutes;   *   *   * when I saw the man go forward on to the platform I observed the conductor at the time was standing on the platform, on to which McKee went; I didn't see the conductor speak to him or make any sign to him, nor hear anything said by any body on the front platform;   *   *   * the noise I heard, which made me think the man got hit, was like any body bumping their head on a table; that noise was something striking against the side of the car; when I saw the conductor he was standing on the front platform."

The witness Leach testified that he was one of the four who was riding with McKee, and he added: "All I observed of the accident was the noise just before the accident; it seems there was a fire on the right, and Mr. McKee said that he was going out to see where it was; he got up and started out alone, and was struck, as I suppose, by a tree as he passed on to the platform; he turned to the right, and I saw the conductor standing there on the platform on to which McKee went.   *   *   * When I last saw him his body was in a stooped position just bending out off the platform; that is all I could see; I heard a noise, heard him strike against the side of the car; then the car stopped.   *   *   * I think there was a little space of time between the time he passed around the door and went out and when the accident happened, a little space before the accident; I could not tell accurately whether it was a minute or half a minute or two minutes."

The witness Revell testified that he was returning on the same car with the deceased; and he adds: ".I sat in the seat opposite McKee with Mr. Leach; I think I sat next to the outside of the car; am not very positive about that. McKee and Ash when they first went aboard sat facing Rochester; before we reached the place of the accident they reversed the back of the seat and sat down,

and McKee was then facing me; that was a short time before the accident, and I sat there but a little while; just before McKee got up I heard somebody say there was a fire over there; * * * as soon as the remark was made about the fire, McKee got up; he said he was going out to see what it was; I don't think anybody went out on the platform with him." This witness adds: "The car was not full this night; there was plenty of room inside; in other words, the deceased did not go out on the platform to ride; it is my idea he went out there to look at the fire."

The witness Ash described what he observed in the course of the trip, and says: "When the accident occurred I was seated in the car, having gone in before McKee went out; * * * I saw McKee when he got up and went out on the platform; I didn't notice the conductor when he went out; the conductor was standing there when I came in, and McKee went out directly, when I came in and sat down; I felt the jar of the car when McKee was caught between the tree and car; he had just about time to get up and go out on the platform and step down there, just about time to walk out and be struck; step down on the platform of the car, perhaps half a minute or so; I don't know exactly how long he was on the platform; it occurred directly after he went out; I don't know how long a period intervened between his going out on to the platform and his getting hit; I just sat down as he went out on to the platform; he went out directly after I sat down; * * * next morning I observed there was a notch cut in the tree, suppose for the eaves of the car to run through."

The witness Burns testified that he "took a measurement from the outside of the rail to the nearest margin of the base of the tree in question; found it was a foot and seven inches; the body of the tree then receded a little, the base being about an inch and a half nearer the rail. From a point about four and a half feet from the ground to about eight feet above the ground the side of the tree towards the track was hewed out; at about seven feet and a half from the ground it was hewed out more than at any other point; I noticed the tree inclined towards the track; I made measurements from the side of the car above the screens to the side of the tree and found it was between four and five inches at all points from the point four and a half feet to the point eight feet

above the ground; that was the distance from the tree to the side of the car above the screens on the car, which I should say were about an inch and a half from the side or standards of the car; I afterwards visited the premises, and the tree at that time was cut down."

From the foregoing facts it is manifest that the intestate, by leaving his seat and going upon the platform and putting his head beyond the standard or side of the car, received the injuries which are complained of in this action. It is contended in behalf of the defendant that the deceased's negligence in leaving his seat and going upon the platform when there was plenty of room in the car and no necessitious occasion to leave his seat contributed to the injuries, and, therefore, that a recovery cannot be had. On the contrary, the plaintiffs contend that the deceased is not chargeable with contributory negligence as a matter of law in standing on the platform and protruding his head outside the line of the car.

The appellants call our attention to *Nolan* v. *B. C. & N. R. R. Co.* (87 N. Y. 63). In that case it appeared that the party receiving the injuries was expressly permitted to ride on the front platform, as the conductor received his fare there, and there was proof that it was customary for the company to require passengers who were smoking to ride on the platform. The facts of that case differ from the one before us.

Our attention is also called by the appellants to *Goodrich* v. *Penn. & N. Y. C. & R. R. Co.* (29 Hun, 50). In that case the passenger left his seat and went upon the platform of the car and stood there until the accident in question occurred. There is no evidence in that case that he put his head beyond the line of the car, and Judge HAIGHT in his opinion reviews the authorities relating to the question, and upon the precise state of facts there disclosed reached the conclusion " that it was a question for the jury whether or not it was negligence for him to stand upon the platform under such circumstances." We think the circumstances in this case are different from that case, and, therefore, that it is not a controlling authority in favor of the plaintiffs.

Our attention is called to *Werle* v. *L. I. R. R. Co.* (98 N. Y. 650). In that case the passenger failed to find a seat, and none was pointed out to him by an employee of the company, and he took a

position on the platform of the car where other passengers were riding and without any objection from the employees, and was thrown from the car by a sudden lurch given by the great and increased speed in which the train was run on turning a curve, and on that state of facts it was held that a question of fact was presented for the consideration of the jury. We think the case essentially differs from the one before us.

Our attention is called to *Ginna* v. *Second Ave. R. R. Co.* (67 N. Y. 596). In that case the car was crowded, and the conductor consented to the passenger standing upon the platform by accepting from him the usual fare without insisting on his finding a place within the car, and while he was thus riding upon the platform he was thrown off and injured by the negligence of the company, and under those circumstances the court determined that the fact that he was standing upon the platform did not of itself constitute contributory negligence, but that it was a question for the jury. The facts of that case differ from the one before us.

Appellants call our attention to *Willis* v. *L. I. R. R. Co.* (34 N. Y. 670). In that case the passenger was standing upon the platform of the cars in motion when there were no vacant seats within the cars. He was obliged to put his baggage on the car and the train started immediately and he paid the conductor for a seat, but found, on examination, that all the seats were occupied, and he was compelled to stand, and the speed of the train was such as to render it hazardous to pass from car to car. We think the facts of that case differ essentially from those disclosed by the evidence in the case in hand.

Our attention is invited to *Francis* v. *N. Y. Steam Co.* (114 N. Y. 380). In that case the plaintiff was a passenger upon a railroad; he was sitting by an open window of a car and had his arm broken as the car passed a bridge. It was claimed by the defendant that the injury was caused by the plaintiff's arm extending so far out of the window that it came in contact with the upright which supported a hand rail on the bridge. However, the testimony was conflicting upon that subject, and the question of whether the plaintiff was guilty of contributory negligence under all the circumstances disclosed in that case was held to be one properly submitted to the jury. We think the case differs in its facts from the one before us.

Appellants cite *Webster* v. *R., W. & O. R. R. Co.* (40 Hun, 161), where a passenger received injuries who was in a baggage car smoking sitting on a trunk, with the knowledge and consent of the conductor, and it was held under all the circumstances of that case " that the question of contributory negligence was one properly submitted to the jury." The facts of the case differ so essentially from the facts in the case in hand that we think it is not an authority controlling in favor of the appellants.

Our attention is invited to *Vail* v. *Broadway Ry. Co.* (6 Misc. Rep. 20). The passenger was smoking a cigar at the time he got on the front platform of the car, and there he paid his fare to the conductor. The facts of the case are so essentially different from those of the case before us that we think it does not sustain the contention of the appellant. In the case in hand it may be said that the deceased " did not incur the peril at the request of the defendant or its officers or agents, or in pursuance of any general or special orders of the company." (*Gibson* v. *Erie Railway Co.*, 63 N. Y. 454, opinion of ALLEN, J.)

In the course of the opinion delivered in *Clark* v. *Eighth Avenue R. R. Co.* (36 N. Y. 138) GROVER, J., said: " It is the duty of the passenger, on getting on board of a car, to place himself in a safe position therein, if he is able to obtain such position, and it is no excuse for him to place himself in an unsafe one, that the persons in charge know that he is unsafe and do not drive him therefrom, when the unsafety is known to the passenger. That riding upon the steps of a street car is less safe than a seat inside requires no proof. It is obviously so."

In *Holbrook* v. *The U. & S. R. R. Co.* (12 N. Y. 244), RUGGLES, J., in delivering the opinion of the court, approved of a charge which was to the effect that the jury " must be satisfied from the proofs, not from speculation, that the defendant's negligence alone caused the injury; that if the negligence or want of care of the plaintiff contributed at all to the result, she could not recover; that the company only contracted to carry her safely when she kept within the cars; that it was for the jury to say whether her elbow was out of the cars at the time of the injury, and, if it was, it was a circumstance or fact from which they might infer negligence or want of ordinary care on her part." In the case in hand it clearly

appears that the intestate was out of the car, away from his seat while the car was in motion, and that he not only stepped out upon the platform, but that he projected his head beyond the standard or side of the car, and that if he had not thus projected his head the injuries which he received would not have occurred.

Appellants call our attention to the case of *Wheeler* v. *Watertown Street Railway Co.* (77 Hun, 611; S. C. affd., 145 N. Y. 639). The facts of that case differ very essentially from those disclosed by the evidence here. There the intestate was rightfully in the highway, and the question submitted to the jury was whether the defendant, after discovering the peril in which he was in, exerted itself to its full capacity to guard against the dangers. There is no evidence in the case before us to indicate that after the intestate had pushed his head beyond the line of the car, any employee of the defendant had an opportunity to withdraw his person from the attitude he had assumed by thrusting a portion of his body beyond the line of the car. Upon all the facts disclosed by the appeal book I am of the opinion that the intestate was guilty of contributory negligence.

The foregoing views lead to the conclusion that the trial judge committed no error when he granted a nonsuit. (*Morrison* v. *Erie Railway Co.*, 56 N. Y. 302; *Solomon* v. *Manhattan R. Co.*, 103 id. 437; *Hunter* v. *C. & S. V. R. R. Co.*, 112 id. 371; S. C. on second appeal, 126 id. 18; *Krauss* v. *W. V. R. R. Co.*, 69 Hun, 482; *Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420.) I am, therefore, inclined to vote for an affirmance of the nonsuit. However, my associates are of the opinion that the questions as to negligence and contributory negligence should have been submitted to the jury. Therefore, a reversal must be ordered.

MARTIN and PARKER, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.