ADA M. DOW CURRIER, Respondent, *v.* DAVID HENDERSON, Appellant.

*A servant has only one master — power of reversal of a judgment without exception taken — when not exercised in a civil action — expert evidence as to injuries sustained — form of objections thereto.*

The law does not recognize two principals, who are not in any way connected, as severally responsible for the acts of one servant.

Upon the trial of an action brought to recover damages for injuries resulting from alleged negligence, it appeared that the accident was due to the negligence of a flyman who was in the defendant's general employment, as one of the regular attaches on the stage of defendant's theater, and at the time of the accident was operating the scenery in the theater under the direction of the plaintiff, who was the stage directress of a theatrical company. The contract between the defendant and the theatrical company provided that the defendant was to supply the theater, with stage and staging scenery, regular attaches on the stage and in front of the house, and some others, for which the defendant was to receive fifty per cent of the gross receipts of the house.

*Held*, that the servants which the defendant agreed to furnish were his servants, and that that relation was not at all affected by the fact that the theatrical company or the plaintiff as its directress was at liberty to direct when and how such servants should perform their duties in the course of the presentation of a play, and that the defendant was liable for the negligent acts of the flyman.

The power of the General Term to reverse a judgment, although an exception be not taken to an error committed by the trial court, is never exercised in a civil action when the error complained of is one that could have been cured on the trial if the attention of the court and opposing counsel had been brought to it.

It is competent in an action brought to recover damages for personal injuries to show by expert witnesses what results are reasonably certain to ensue from the injuries sustained, and the form of the objection to evidence given by an expert witness on such subject should be such as to call the attention of the court sharply to the fact that the testimony being adduced is not confined within the limitations of the rule.

APPEAL by the defendant, David Henderson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of June, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 28th day of May, 1894, denying the defendant's motion for a new trial.

*Louis Marshall*, for the appellant.

*Christopher Fine*, for the respondent.

PARKER, J.:

The jury rendered a verdict in favor of the plaintiff, in the sum of $18,000, for damages sustained by the falling of a batten from the flies in defendant's theater, which struck her on the head and fractured her skull. A portion of the skull had to be removed, and her life was for a time seriously threatened.

The evidence tends to show that the accident was due to the negligence of the flyman, who was in the defendant's general employ, but at the time of the accident was operating the scenery under the direction of the plaintiff as stage directress of the Julia Marlowe Company.

Defendant contends that by reason of the fact that the plaintiff, as such directress, had the right to direct and control the action of the flyman during the performance, the defendant did not stand in the relation of superior to the flyman, whose wrongful act constitutes the ground of action. The point is presented by exceptions taken to the following portions of the charge of the trial court:

"The defendant, under the agreement between himself and the Julia Marlowe Company, was liable to the plaintiff, as a member and component part of that company, for any injuries which she received from the carelessness and negligence of the defendant, or any of the attaches or employees which he supplied or furnished on the stage or in the fly gallery, in either the management or manipulation of the hoisting or lowering of any of the scenery used in the play that the company was performing.

"Although the defendant's servants were under the immediate control of the theatrical company, yet they were not its servants in the ordinary sense. They were none the less his, the defendant's,

servants.   He alone employed and paid them, and he alone had the power to discharge them."

Either the defendant or the Julia Marlowe Company was, in a legal sense, the flyman's superior when the accident occurred.   Both could not be, for the law does not recognize two principals who are unconnected as severally responsible.   (*Hobbitt* v. *L. & N. W. R. R. Co.*, 4 Exch. 253 ; *Pack* v. *The Mayor*, etc., 8 N. Y. 222 ; *Sloane* v. *Elmer*, 64 id. 201.)

If the plaintiff or the Julia Marlowe Company was the flyman's superior then the exception was well taken, otherwise not.

We have been favored on this argument with extracts from opin_ions which, if accepted instead of the decisions actually made, would seem to support equally well the contention of either party.   But, as we have said, both parties could not stand in the relation of superior to the flyman.   One of them clearly did, and we think that one was the defendant.   The evidence, which includes the contract between the defendant and the Julia Marlowe Company, shows that the defendant was to, and did, supply the theater with stage and staging scenery, police, regular attaches on stage and in front of the house leader of and orchestra, for which the defendant was to, and did receive from the Julia Marlowe Company fifty per cent of the gross receipts of the house.   The flyman was one of the regular attaches on. the stage, and he, together with all the other attaches and servants which the defendant by his contract agreed to furnish, were employed and paid by the defendant.

They were not employed for this special occasion, but were the standing employees in defendant's theater.   In other words, the defendant agreed to furnish to the Julia Marlowe Company, for fifty per cent of the gross receipts, the theater, scenery and all necessary employees for its conduct and management, and the company, in consideration therefor and of fifty per cent of the gross receipts, agreed to give certain performances.   The servants which the defendant agreed to furnish, and did furnish, whom he hired and paid and alone had authority to discharge, were his servants, and that relation was not at all affected by the fact that the Julia Marlowe Company, or the plaintiff as its directress, was at liberty to direct when and how they should perform their duties in the course of a presentation of a play.

This situation seems to us precisely analagous to that of person who hires from a liveryman a team with carriage and driver for an afternoon's drive. To a limited degree the hirer acquires dominion over the servant, may direct upon what streets to drive and where to stop, but the driver continues in legal contemplation the servant of the owner, who is responsible for his negligence, though it occurs in the course of a drive which the hirer directs.

It is further urged that a recovery was had upon a ground not alleged in the complaint; that the plaintiff charged that the defendant was careless and negligent in the maintenance and construction of the scenery, and in permitting the same to become and remain out of repair, and not that it was due to the negligent acts of the flyman.

This point is not well made for two reasons :

(1) The evidence relating to the misconduct of the flyman was admitted without objection being made by the defendant that it was not within the pleadings.

(2) Neither by a request to charge, nor by an exception to the charge as made, was the attention of the court called to the claim which appellant now makes. Counsel in effect concedes that the exceptions to the charge were lacking in definiteness, but invokes the power of the General Term to reverse though an exception be not taken.

It is a sufficient answer to make in this case to say that this power is never exercised in a civil action when the error complained of was one that could have been cured on the trial, if the attention of the court and opposing counsel had been brought to it. In this case the court could, and doubtless would, have conformed the complaint to facts proved, had the fact of the variance between the complaint and the proofs been alluded to.

Dr. Graham, who attended the plaintiff during a portion of her illness, described the nature of the injury to the plaintiff's brain, after which the examination continued as follows :

" Q. What results usually follow such an injury of the brain ? A. You mean what may follow. Q. What usually follow ? [Objected to. Objection overruled. Exception.] Well, sometimes they get entirely well and leave no results, but injuries of that kind are almost certain to leave damage to the brain — permanent damage

such as — well, you might sum it all up, say an unstable condition of the nervous system manifested in various ways. One might be simple hysteria or a loss of equilibrium of temperament, such as fretfulness and that kind of thing, epilepsy, insanity, feeble-mindedness generally; those are the possible results and what often follow these injuries. That is what I mean to say. Q. How long after the injury may these different symptoms be manifested? [Objected to. Objection overruled. Exception.] A. Oh, might be for a lifetime. Q. You do not understand my question. I will make it more clear. Do those symptoms necessarily follow immediately after a healing of the wound, or may they come at a later period? A. You mean these various manifestations. Q. Yes, sir? A. Well, it is possible that they continue right along from the time of the injury to the healing of the wound, or some of them may come on at any time later. Q. And is this time in which they may appear limited by any number of years? A. No, except the further along the patient goes without any, the less liable they are to come. One of the manifestations that I describe is that of extreme irritability. Q. Suppose they were to appear in this plaintiff, within a period of from one to three years after this injury, would you consider them due to the injury? A. Well, it would be a matter of opinion; it would be a fair inference. * * * Q. In your judgment would this injury necessarily affect the future conduct of the patient with respect to the business she might follow or habits of life which she might pursue? A. Well, I could not say it would necessarily, but I would say it was more liable to. Q. In what way? [Objected to. Objection overruled. Exception.] A. Well, if any of these sequels or manifestations I have previously described should be present she would be, to a certain extent at least, unfitted for any occupation of any kind if she would have epilepsy. Of course, if she would have simply loss of equilibrium or mental condition unstable, why, she would be somewhat incapacitated for certain kinds of work. Of course, if she became entirely insane, she would be entirely unfitted. Q. Would she, in your judgment, be able to take part in any business of an exciting nature or one which required her to remain up late at night? [Objected to. Objection overruled. Exception.] A. Well, there would be more likelihood of her inability to do that than if she had never been injured."

Had a proper objection been made, it is clear that the evidence objected to should have been excluded under the authority of *Strohm* v. *The N. Y., L. E. & W. R. R. Co.* (96 N. Y. 305). (*Griswold* v. *N. Y. C. & H. R. R. R. Co.*, 115 id. 61.)

It is competent in such cases to show by competent experts what results are reasonably certain to ensue from the injury, and that being so, the form of the objection should be such as to call the attention of the court sharply to the fact that the testimony being adduced is not confined within the limits established by the decisions of the courts. (*McCooey* v. *Forty-second Street R. R. Co.*, 79 Hun, 255.)

This general rule should be insisted on, because, in the giving of testimony by an expert upon a general subject which he is presumed competent to testify about, the court may not appreciate that the witness is testifying as to a result which *may* or is *liable* to occur rather than one which is *reasonably certain* to ensue from the injury. Whereas, if his attention be brought to the distinction by the form of the objection, a correct rule will be observed and no injustice will result to either party. Any other course would be to encourage counsel in setting pitfalls for the court with new trials as the attendant result.

The judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment affirmed, with costs.