11  373
14ap 54

WILLIAM H. MAGILTON, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Negligence — open gate at a railroad crossing — contributory negligence of the land-owner in not repairing it — speculation by the jury as to the cause of an accident.*

Where a railroad corporation has once constructed a gate at a farm crossing in a proper and substantial manner, and the gate, by lapse of time, has, in consequence of its sagging, become to the knowledge of the owner of the abutting lands difficult to fasten, it is a question for the jury, in an action brought by the owner of the abutting land to recover for the loss of a horse which has passed through the gate when open and been killed upon the railroad track whether the owner should not have readjusted the hook or staple fastenings of the gate, or have taken some other means to prevent his horse from escaping upon the track.

The jury should not, in such a case, be permitted to speculate as to the possibility of the horse, when being bitten by flies, having rubbed against the gate, or bitten it and pushed it open, when there is no positive evidence that he did so, and only proof of a general habit of horses, when bitten by flies, to rub against or bite the fence.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Greene on the 16th day of March, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Greene, and also from an order entered in said clerk's office on the 6th day of March, 1896, denying the defendant's motion for a new trial made upon the minutes.

*F. L. Westbrook,* for the appellant.

*Frank H. Osborn,* for the respondent.

LANDON, J.:

On August 21, 1893, the plaintiff's horse strayed upon defendant's tracks from plaintiff's pasture, adjoining defendant's railroad, through an open gate forming part of the division fence between plaintiff's land and defendant's railroad, and was killed by defendant's engine. Upon the trial the plaintiff disclaimed recovery upon any other ground than that of defendant's violation of the statute imposing upon it the duty to " erect and thereafter maintain fences on the sides of its road of height and strength sufficient to prevent cattle, horses, sheep and hogs from going upon its road from the adjacent lands, with farm crossings and openings with gates therein at such farm crossings whenever and wherever reasonably necessary * * * So long as such fences are not made or are not in good repair, the corporation * * * shall be liable for all damages done by their agents or engines or cars to any domestic animals thereon. When made and in good repair they shall not be liable for any such damages unless negligently or willfully done." (Railroad Law, chap. 565, Laws of 1890, § 32, as amended by chap. 676, Laws of 1892.)

The defendant, in 1890, constructed this gate at the plaintiff's request at his farm crossing. It was a swing gate, substantial and heavy, with a hook and staple fastening, and was constructed as the plaintiff directed. The weight of the gate caused it to sag so that, instead of swinging free from the ground, the staple end dragged upon it, and it could not be fastened by the hook and staple. The gate opened down hill, and its weight, when open, had pulled the top of the hinge post in that direction, so that in closing the gate its bottom passed the foot of the post to which it should be hooked, and the top of that post had also slanted away from the gate so that it could not be hooked at all. When the gate was properly fastened it was of height and strength sufficient to prevent horses and cattle from going upon the railroad tracks. The gate was usually fastened by pushing its foot past the staple post, where it was held by its own weight upon the rising ground of the roadway, and sometimes a stone or stick was placed against it. When the gate was freed from

these fastenings it would swing open of its own gravity.   It had been in this condition about a year before plaintiff's horse was killed.   About ten days before his horse was killed the plaintiff called defendant's superintendent's attention to it, and he promised to repair it.   The gate was seen to be closed about an hour before the plaintiff's horse was killed.   Whether it was fastened by a stick or stone was not shown.   When the horse was killed the gate was found open.   How it was opened did not appear.

The plaintiff gave evidence, over the objection of the defendant, that flies bite horses in August, and that then the horses will rub their necks and bodies against fences, and that horses have a propensity to bite the boards of gates and fences, and also gave evidence of the marks of biting upon the top board of the gate.   The counsel for the defendant asked the court to charge that the jury were not authorized to find from this evidence that the gate was opened by a horse rubbing against it to get rid of flies, or by a horse biting a board of the gate.   This the court refused.

We think this refusal was error.   The gate may have been opened by any one of many means — by a tramp, by design, by carelessness, possibly by the horses bitten by flies and rubbing against the gate, or by biting the gate.   Proof of two of the many means is not proof that it was by one of these two possible means.   When proof of a fact is sought through circumstantial evidence, the circumstances must be proved, not surmised.   It is possible that some of the habits of animals are so constant that, the habit being shown, its constancy follows; but we do not suppose this to be true in respect to horses rubbing against gates or biting them.   The best that can be said of this evidence is that it was possible that the horse opened the gate in one of the ways suggested.   There was no evidence that the flies bit the horses that morning; none that the horses rubbed against the gate; none that the gate was thus opened.   From two conjectures, the second dependent upon the first, the fact in question is conjectured or surmised.   Plainly, this will not do.   (*Borden* v. *Del., Lack. & W. R. R. Co.*, 131 N. Y. 671; *Searles* v. *Manhattan Ry. Co.*, 101 id. 661; *Taylor* v. *City of Yonkers*, 105 id. 202, 209; *Bond* v. *Smith*, 113 id. 378–385.)

The counsel for the defendant excepted to the charge made at the request of the plaintiff's counsel, that the plaintiff was not required

by law to fix the gate or its fastenings in any way, and that his failing to do so did not prevent his recovery.

The court refused to charge, at the defendant's request, that in order to recover the plaintiff must prove, by a preponderance of evidence, that he was not guilty of contributory negligence in not using proper care to keep his horse from going on the railroad track. The defendant also requested the charge that if the plaintiff could easily have changed the position of the staple so that the hook could be put into it, the jury might take that into consideration in determining whether plaintiff was negligent.

Also, that if the gate and post sagged in consequence of the plaintiff leaving the gate open and swinging loose from time to time, it was negligence on the part of the plaintiff.

And if the plaintiff, by leaving the gate open and swinging, had thus caused the gate to sag so that the hook would not enter the staple, it was the plaintiff's duty to remedy the difficulty.

Also, that it was the duty of the plaintiff to keep the gate closed, if it could be done.

The court declined to charge as requested by defendant.

The responses of the court to these various requests were equivalent to an instruction to the jury that the plaintiff need not, under any of the conditions suggested by the requests, fix the fastenings of the gate, however easily he might have done so, even if they had got out of order because he allowed the gate to swing loose on its hinges.

It was the duty of the defendant to maintain this gate, as part of its fencing, in good repair.

It was plainly the duty of the plaintiff to use it with reasonable care, and also to use reasonable care in shutting and fastening it, when the occasion for having it open was ended. Let us concede that it was the duty of the defendant, after notice, to readjust hook and staple or the gate posts so that the gate could be readily fastened, and, therefore, that the defendant was guilty of negligence in not performing its statutory duty. (*Hodge* v. *N. Y. C. & H. R. R. R. Co.*, 27 Hun, 394.) It is clear that, if the plaintiff's neglect to take such care of his gate as he reasonably ought was the cause of his horse escaping through it upon the track, then the plaintiff ought not to recover, for in such case his negligence is one of the

concurring causes of his loss. (*Poler* v. *New York Central R. R. Co.*, 16 N. Y. 476.) Ought he, under the circumstances, to have readjusted the hook or staple ? The learned trial judge said that the law did not require him to fix the fastenings in any way. Now, the law required him to do what was reasonable under the circumstances; and, since this instruction was given at the request of the plaintiff, the jury would understand that, under the circumstances here proven, the law exempted the plaintiff from fixing them. We do not think that the plaintiff was entitled to so broad an instruction. Is it reasonable for a farmer who knows that the fastenings of his gate need readjusting, and that he can easily do it, to expose his horses to the danger of being killed, and rest upon the statute for his remedy ? We think not. We think the question whether the plaintiff was negligent in respect to his care of this gate was for the jury. (*Murray* v. *New York Central R. R. Co.*, 4 Keyes, 274.)

Cases are cited in which the plaintiff's contributory negligence has not deprived him of recovery. In *Shepard* v. *Buffalo, New York & Erie R. R. Co.* (35 N. Y. 641) there was no fence upon one side of the railroad. The plaintiff pastured his cattle upon that side. The court said that, if the company was not liable because of such alleged negligence on the part of the plaintiff, then the company need not fence at all, and the entire risk would be upon the plaintiff. Of course that would defeat the statute altogether. The negligence of the plaintiff in allowing his cattle to stray upon the lands of an adjoining owner, and thence through the railroad company's defective fence, does not defeat plaintiff's recovery. (*Corwin* v. *New York & Erie R. R. Co.*, 13 N. Y. 42.) Such negligence is between the plaintiff and the adjoining owner. Nor if the cattle are running at large upon the highway contrary to law. (*Bradley* v. *Buffalo, New York & Erie R. R. Co.*, 34 N. Y. 427.) It may be that the further the plaintiff's cattle escape from his protection the more they need that of the law. We need not hold otherwise. But it seems clear that, when the plaintiff charges the railroad company with neglect in keeping in repair a fence or gate between the plaintiff's land and the railroad tracks, the plaintiff should be free from neglect in the care and use of the fence or gate with which he is provided. The jury might have found that, if he had used such care the horse

would not have been injured. (*Hance* v. *Cayuga & Susquehanna R. R. Co.*, 26 N. Y. 428.) We did not hold otherwise in *Connolly* v. *Central Vermont R. R. Co.* (4 App. Div. 221). There the plaintiff's horse came upon the railroad tracks through the open bars of another's land upon which the horse had strayed. The bars had been down for a long time before the injury. The plaintiff owed the defendant no duty respecting them.

The judgment and order should be reversed, a new trial granted, costs to abide the event.

All concurred, except PUTNAM, J., not sitting.

Judgment and order reversed and a new trial granted, costs to abide the event.