---

PURCELL v. LAURER et al.

(Supreme Court, Appellate Division, Fourth Department. February 9, 1897.)

1. DAMAGES—EFFICIENT CAUSE—QUESTION FOR JURY.
    It is a question for the jury whether an injury to decedent's knee and back was the cause of her death, where plaintiff gave evidence that the injuries caused an abscess, from which blood poison resulted, and that the blood poison caused gastritis, from which death ensued; while defendant adduced evidence that the cause of gastritis was malaria, which is taken into the system either

through the lungs or stomach, and cannot result from a physical injury. Green, J., dissenting.

2. SAME—DEATH AFTER A YEAR AND A DAY—PRESUMPTION.

The common-law presumption in criminal cases that an injury was not the proximate cause of the death because it did not occur within a year and a day after the injury, does not apply to civil cases.

3. SAME—EXCESSIVE JUDGMENT—DEATH BY WRONGFUL ACT.

A verdict for $3,000 for the death of plaintiff's daughter is not excessive where plaintiff was 82 years old at the time of the death, was entirely dependent on decedent for support, and was in good health, likely to live for a long time.

Appeal from trial term, Monroe county.

Action by James Purcell, as executor of Mary G. Wooster, deceased, against Frederick C. Laurer and others, for death by wrongful act. From a judgment in favor of plaintiff entered on a verdict, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

The action was to recover damages for the negligence of the defendants in causing the death of Mary G. Wooster, deceased, a resident of the city of Rochester, which occurred March 11, 1895. The injury complained of she received on the 23d day of October, 1893, while she was going along a sidewalk in that city, in the evening, by tripping over a cable wire drawn across the walk, which was used as a guard to support the defendants' derrick while they were constructing a bridge. The cable was about two inches above the sidewalk. The deceased was a large, heavy woman, weighing about 180 pounds, and was carrying a number of bundles in her arms. She fell to the sidewalk, greatly injuring her right knee, and, to some extent, her left one, and the evidence tended to show that in the fall, or in the wrench given by it to her body, she seriously injured her spine. She was taken to her home, and there was evidence tending to show that the knee-cap of the left limb was injured; that swelling and inflammation resulted from the injury; that the accident caused a great shock to her nervous system; that she was compelled to employ a physician and a nurse, and received treatment almost continuously for the injury, until the time of her death; that an abscess was formed, and a suppuration created under her knee; that evidence of blood poisoning occurred; that she gradually grew weaker and thinner from the time of her injury until her death; that at times she had symptoms of fever, which appeared to be recurrent or intermittent, and the physician in charge, who seemed to have been an experienced and capable one, attributed her death to the original injury and shock caused by the accident. The deceased was a remarkably vigorous and healthy woman before the injury, about 60 years of age, and with great powers of resistance as against disease. She was a widow. Her husband had been killed in the war for the Union, and she was drawing a pension of about $200 per year, and, in addition thereto, earned considerable as a music teacher. Her next of kin was her father, a gentleman who at the time of the trial was about 82 years of age, but a man of vigor and good health, and to all appearances likely to live for some time, and almost entirely dependent upon her for his support. She was his housekeeper, took charge of his business and household so far as it pertained to their home, turned her pension in for his support, and seemed indispensable to his comfort and support. The defendants concede that the deceased was not at fault as to the injury, and that there was evidence upon which she might have recovered against the defendants for the injury which she sustained, if she had brought the action herself. Nor do they question but what the defendants were negligent in the matter; indeed, it appears they were grossly negligent. But the defendants do claim that as a matter of law it did not appear that the injury and her death were so connected as to render the defendants liable to her executor after her death; and the defendants upon this appeal made four points: First, that upon the whole evidence the injury was not the proximate cause of the death, nor was the death the natural or probable result of the defendants' wrongful act; second, that there is a conclusive presumption that the injury was not the proximate cause of the death, because it did not occur within a year and a day after the injury; third, that it was shown upon the trial that the origin of the fever

that the deceased had was malarial, which comes from matter in the atmosphere, and is an intervening cause of death, and that the court had erred in its charge upon that subject; and, fourth, that the damages awarded by the jury, of $3,000, are excessive. The defendants' evidence was principally from physicians testifying as experts, only one of whom had examined the deceased after her injury, and he not the attending physician; and they, upon their direct examinations, advanced the opinion that the fever of which the deceased at times suffered was of a malarial character, indicating the presence of germs of disease, which was an intervening cause, and consequently the death was not attributable to the injury, but to such intervening cause. Their conclusions were much shaken upon their cross-examinations, and it was fairly a question for the jury whether the fever was malarial in its character or coming from pus or impure matter and dead tissue passing into the system, creating local inflammation and what was known as "blood poisoning"; all as a result of the injury to the knee and the other injuries. The immediate cause of the death seems to have been gastritis, being either an acute or chronic inflammation of the stomach.' The plaintiff's evidence tended to show that this condition was created by causes the direct result of the injury to the knee, the spine, and the shock of the accident; while the defendants' evidence tended to dispute this proposition.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George F. Yeoman, for appellants.
George Raines, for respondent.

WARD, J. The question of fact upon which arises the principal contention of the defendants upon this appeal—as to whether the injury to Mrs. Wooster which resulted from the defendants' negligence was the proximate cause of her death—was clearly a question for the jury, and was fairly submitted to them by the learned trial court. The plaintiff having established the injury which might be productive of the result claimed, and shown a state of facts that would naturally produce it, if an intervening cause were established, sufficient, as a matter of law, to show another cause of the death, the burden of doing so devolved upon the defendants. A careful examination of the whole evidence in the case satisfies us that this was not done; at least so far accomplished as to justify the trial court in taking the question from the jury.

The fact that the deceased survived the accident a year and four or five months is greatly relied upon by the defendants to justify their position that a presumption has obtained from the lapse of time that some intervening cause, not connected with the accident, caused the death of Mrs. Wooster; and they refer to the common-law 'presumption that the injury was not the proximate cause of the death because it did not occur within a year and a day after the injury. This was a rule of the common law in relation to homicide, and does not prevail in this state in criminal cases, and has no application to civil cases. Schlichting's Adm'x v. Wintgen, 25 Hun, 626. That was an action to recover damages for the negligent killing of a person who died a year and seventeen days after the injury. And see, also, Sias v. Railway Co., 92 Hun, 140, 36 N. Y. Supp. 378. But this lapse of time was a circumstance to be submitted to the jury in connection with the other evidence in the case.

The appellants' counsel relies principally upon Scheffer v. Railroad Co., 105 U. S. 249, which was a railway collision case, where

a passenger was injured, and afterwards became disordered in mind and body, and some eight months after the accident committed suicide. In an action by his representatives to recover damages for his death it was held that the proximate cause of his death was the suicide, and not the injury received by the deceased. It did not seem susceptible of clear proof that the injury caused the suicide. Whether it did or not was necessarily a matter of conjecture. Could it have been fairly shown that the suicide would not have occurred but for the injury, a different case would have been presented. But the court in that case recognized the rule to be that ordinarily in such cases the liability of the defendant is a question for the jury, and cite with approval Railway Co. v. Kellogg, 94 U. S. 469, which was a fire case, where the sparks from a steam ferryboat had, through the negligence of its owner (the defendants), set fire to an elevator. The sparks from the elevator had set fire to the plaintiff's sawmill and lumber yards, which were three or four hundred feet from the elevator. The court was requested to charge the jury that the injuries sustained by the plaintiff were too remote from the negligence to afford a ground for a recovery. This the court refused, but submitted to the jury to find whether the burning of the mill and lumber was the result reasonably to be expected from the burning of the elevator; whether it was the result which, under the circumstances, would not naturally follow from the burning of the elevator; and whether it was the result of the continued effect of the sparks from the steamboat, without the aid of other causes not reasonably to be expected.

In Ehrgott v. Mayor, etc., 96 N. Y. 264, where the plaintiff drove into a ditch in the street, his horses jumped, the axle of his carriage was broken, and he was dragged partly over the dashboard. He procured another carriage. The matter was reported to the police, and the plaintiff drove several miles to his home, which took several hours, and during which time he was exposed to the cold rain, and his clothes became saturated with water. The plaintiff's evidence tended to show that the injuries which resulted were caused by the strain and shock of the accident, and the defendant gave evidence tending to show that the diseases were the result of the subsequent exposure to the cold rain. The trial court charged that, whether his injuries resulted from the strain and shock or from the exposure after the accident, the defendant was still responsible for the injuries from which the plaintiff was suffering. Upon appeal the court of appeals sustained this charge, and the opinion of Judge Earl in the case tends to sustain the conclusions here reached.

Reference may also profitably be had to Pollett v. Long, 56 N. Y. 200; Sauter v. Railroad Co., 66 N. Y. 50; Mitchell v. Railroad Co., 4 Misc. Rep. 575, 25 N. Y. Supp. 744; Leonard v. Telegraph Co., 41 N. Y. 544; Perley v. Railroad Co., 98 Mass. 414; Jucker v. Railroad Co., 52 Wis. 150, 8 N. W. 862; Delie v. Railroad Co., 51 Wis. 400, 8 N. W. 265; Railroad Co. v. Kemp, 61 Md. 74; Williams v. Vanderbilt, 28 N. Y. 217.

The appellants complain of the charge of the court to the effect that if the injuries caused the abscess, and the abscess blood poison,

and the blood poison caused the gastritis from which Mrs. Wooster died, the plaintiff might recover. The whole charge must be taken together. The court did charge that unless the death was the probable and natural result of the injury, there could be no recovery. Also that unless the gastritis was the natural and probable result of the fall, there could be no recovery. Also that they could not find for the plaintiff unless they could say as a matter of reason, and not conjecture, that the fall was the proximate cause of death; and the court added: "There must not be a link missing. You must find the chain complete. For instance, the injury which she received caused the abscess, the abscess the blood poison, and the blood poison the gastritis with which she died." The matter excepted to was rather by way of illustration. The trend of the cases, both civil and criminal, is in the direction that, so long and so far as the ultimate result can be traced directly to the first great cause, though through successive stages, the responsibility rests with the one who put in operation the chain of events which wronged or injured the plaintiff. Particularly is this so in cases of this character. We find no reversible error in the charge, or in the exceptions taken thereto, or to the refusals to charge.

· The jury awarded a verdict to the plaintiff of $3,000. The plaintiff, the next of kin, was before them. They could judge from his appearance something as to the years that should be allotted to him in the future. They found a penniless and dependent old man, whose span of life might be stretched out a decade. The only child upon whom he could depend for his support in his old age, and who was comfortably supporting him at the time she was injured, had been taken away from him by the negligence of the defendants, as the jury found. We cannot say from this evidence that this verdict was so excessive as to justify us in reversing it for that reason.

The judgment and order should be affirmed, with costs. All concur, except GREEN, J., dissenting.

GREEN, J. (dissenting). All damages must be the result of the injury complained of, and in the proof of damages both parties must be confined to the principal transaction, and to its attendant circumstances and natural results; for these alone are put in issue. These results include all the damages to the plaintiff of which the injurious act of the defendant was the efficient cause, though, in point of time, such damage did not occur until some time after the act done. 2 Greenl. Ev. §§ 254–258. In other language, the damages must be the natural and reasonable result of the defendant's act; such a consequence as, in the ordinary course of things, would flow from the act. Railway Com'rs v. Coultas, 13 App. Cas. 225. Remote damages may be said to be those which are not an ordinary and natural, not an expected, not a necessary and usual, result of the negligent act; or those which depend upon a concurrence of accidental and varying circumstances, over which the negligent party has no control. Webb v. Railroad Co., 49 N. Y. 420. In determining the constituents of a remote cause, an eminent legal author offers this solution:

"And the inadequate remote cause, which is not sufficient to charge the party, we may define to be one which has so far expended itself that its influence in producing the injury is too minute for the law's notice; or a cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof. To illustrate: If, after the cause in question has been in operation, some independent force comes in, and produces an injury not its natural or probable effect, the author of the cause is not responsible." Bish. Noncont. Law, p. 43.

In the language of Grover, J., in Pollett v. Long, 56 N. Y. 200:

"A party is liable for the natural and probable consequences of his wrongful acts and omissions, but not those which are remote and speculative. The law will not enter upon inquiries as to the latter, for the reason that such a degree of certainty cannot be arrived at in respect thereto as to constitute a safe ground for judicial action."

"In order to make a defendant liable, his negligence must be the causa causans, and not merely a causa sine qua non. A proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred. Where an injury to one is caused by, and is the natural and probable result of, the wrongful act of another, such other is liable therefor, although the causes, put in motion by the act or omission, and which, in the absence thereof, would not have produced the result, contribute to the injury." Robertson v. City of New York, 7 Misc. Rep. 645, 28 N. Y. Supp. 13; Id., 149 N. Y. 609, 44 N. E. 1128.

In Shear. & R. Neg. § 742, the doctrine is stated in these words:

"There is substantial uniformity of doctrine that every such subsequently developed disease which would naturally ensue from the injury, and which cannot be shown to have resulted from a sufficient independent cause, must be imputed to the author of the original injury."

In a recent work it is stated that it must appear that the death was the result of the act or neglect, and not of the intervening cause. But the death will be referred to the act, if it was sufficient to cause the death, unless it be shown that the death must have resulted from the intervening cause, independently of the injury. Tiff. Death Wrong. Act, § 76.

In Ehrgott v. Mayor, etc., 96 N. Y. 265, 281, the court said that:

"The true rule, broadly stated, is that a wrongdoer is liable for the damages which he causes by his misconduct. But this rule must be practicable and reasonable, and hence it is it has its limitations. A rule of law, to be of practicable value in the administration of the law, must be reasonably certain. It is impossible to trace any wrong to all its consequences. They may be connected together, and involved in an infinite concatenation of circumstances. The best statement of the rule is that a wrongdoer is responsible for the natural and probable consequences of his misconduct, and what are such consequences must generally be left for the determination of the jury."

The court there stated that the exposure was the direct and proximate result of the accident, and there was such a direct connection between the accident and the exposure as to make the defendant liable for the latter.

"It must, however, be admitted that there is considerable authority in opposition to these views." "But, even if the portion of the charge just referred to was erroneous, it was entirely harmless, as the jury (specially) found that the diseases from which plaintiff suffered were the direct result both of the accident and the subsequent exposure, and that the effect of the exposure was simply to increase and aggravate the injury received from the accident. There were, according to the finding of the jury, two causes operating to produce plaintiff's injuries, each of which was essential to produce the result. The accident without the exposure, and the exposure without the accident, would not have caused them."

43 N.Y.S.—63

In Schoen v. Railroad Co. (Super. N. Y.) 9 N. Y. Supp. 709, it was held that the burden is upon the plaintiff to establish as a part of his case, and by competent evidence, that the wrongful act or neglect was the actual cause of death. The decedent, a boy of five years of age, was injured by the wheel of a car passing over his hand, and was taken to the hospital, where he died 20 days thereafter. While there his hand was amputated. No evidence was given that the injury was sufficient to cause death, or to require amputation. The only witness called was the coroner's physician, who had never seen the decedent until after his death, and had no personal knowledge as to the character of the injuries which resulted in the amputation. He testified that there were no other signs of violence than the amputated arm, and that the amputation of a person's arm is not usually fatal. As the result of a post mortem examination, which had disclosed that the left side of the pleura or membrane involving the lung was in a state of acute pleuritic inflammation, he undertook to say that, in his opinion, the cause of death was exhaustion and acute pleurisy, following in the wake of the amputation; but he did not account in any way for the origin of the pleurisy. "As the case was left, the pleurisy might have come from a cold or exposure before the accident, or from the condition of the boy immediately preceding the accident, although he then appeared in health, or from subsequent unnecessary exposure in the hospital." This being, in substance, the state of the evidence, the court held that there was no sufficient competent evidence that the death was the legitimate result of the wrongful act.

In Dickson v. Hollister, 123 Pa. St. 421, 16 Atl. 484, a physician testified that erysipelas supervened in a few days; that it frequently, though not usually, follows wounds; but, if there had been no wound, there would have been no erysipelas. The court charged that, if the erysipelas would not have occurred if the injury had not happened, it was to be considered by the jury as part of the injury itself. The appellate court pertinently observed:

"Although, according to the testimony of medical experts, erysipelas is not a necessary consequence of such an injury, yet it is conceded that in frequent instances it does follow flesh wounds. The causes which produce erysipelas would seem to be obscure. The modern theory is that erysipelas is the result of some specific poison, which enters the system through the exposure of a wound; but the nature of this poison, and the conditions under which it operates, are not well understood. The disease was, however, a development which might fairly have been anticipated as a result of the injury; and as, in this instance, the disease developed in the wound, it was a reasonable inference of the jury that, if there had been no wound, there would have been no erysipelas. * * * The negligence of the defendant may therefore be regarded not only as the direct cause of the wound, but of the disease, which, from occult causes, not attributable to treatment, improper habits, or peculiar constitutional tendencies, frequently develops from personal injuries. Nothing intervened to produce this disease other than might have been fairly anticipated as the direct, although not the necessary, result of the injury. As well might we attribute the contact of the atmosphere, or the microscopic existences therein, as an intervening cause in such cases."

See, also, Ginna v. Railroad Co., 8 Hun, 494, 501.

In these cautious terms, and with much circumspection, the court stated the principle that should be applied in cases of this charac-

ter in determining the probable effects and consequences of the wrongful or negligent act for which the wrongdoer is responsible. It may be that the peculiar circumstances of particular cases will warrant an extension of the principle of liability, but it has particular significance and application to the circumstances of the case presented on this appeal. In Trapnell v. City of Red Oak Junction, 76 Iowa, 744, 39 N. W. 884, some months after the accident a cancer was developed in plaintiff's breast, and experts testified that a blow or bruise might have been the cause of it, but such result would only have followed in a case where the germ of the disease existed in the system before the accident. The court remarked that, while an injury by external force might have caused it to develop, it might also have developed without such cause. "Before she can recover, she must establish that the relation of cause and effect existed between the fall and her suffering. But when we look into the evidence we find that it merely established a condition that might have been caused by an injury at the time, but whether such injury did occur is a matter of surmise. The existence of a fact is not proven by evidence of a subsequent condition which is merely consistent with its existence."

In Weber v. Railroad Co. (Sup.) 42 N. Y. Supp. 789, it was held that the evidence was insufficient to warrant the jury in finding that the injury to the intestate's knee caused tuberculosis of the joint, which, gradually extending to the lungs, produced the consumption which caused his death. Rumsey, J., said:

"The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? Railroad Co. v. Kellogg, 94 U. S. 469. It is not necessary for the plaintiff who claims that the injury was the proximate cause of the consumption of which this man died, to show that it was the only cause. It is sufficient if she establishes that the injury set in motion other causes, which produced the disease and the death, but which, in the absence of this injury, would not have produced it. Pollett v. Long, 56 N. Y. 200. But this proof on the part of the plaintiff must be made by evidence which establishes the fact; and, unless the evidence is sufficient to show the connection between the immediate cause of death and the injury received, the plaintiff cannot recover. * * * If the consumption was caused (as Dr. McHale says it might have been) by so reducing the vitality of the patient as to make him unable to throw off the germs of consumption which attacked him through the lung, the injury would not constitute the first of a continuous succession of events, so as to make the defendant liable for the consumption, because the reception into the lungs of germs of consumption from the outside would be a new and independent cause intervening between the injury and the result, for which the defendant would not be liable. * * * The rule in such cases is that a mere conjecture, built upon a bare possibility, will not suffice to transfer the money or property of one man to the possession and profit of another. Pauley v. Lantern Co., 131 N. Y. 99, 29 N. E. 999. There must be, at least, to warrant such a conclusion, so much testimony that the inference is reasonable; and, when that has not been given, a verdict based upon less testimony cannot be permitted to stand."

Respondent's counsel cites Sauter v. Railroad Co., 66 N. Y. 50, and makes this quotation from the opinion of the court:

"This was proved to be sufficient to cause the hernia of which he died. The circumstances pointed to this as the cause, and repelled the idea of any other. True,

the evidence was that it might have been produced by many other causes, but there was no evidence tending to prove that it was produced by any other. On the contrary, the inference was legitimate that it was not."

But in that case it appears that a physician was called the very next day after the injury, and found that the decedent had inguinal hernia, and he never again left his bed alive. See Id., 6 Hun, 448.

In Hoag v. Railroad Co., 85 Pa. St. 297, this language was used:

"How near or remote each fact is to its next succeeding fact in the concatenation of circumstances from the prime cause to the end of the succession of facts which is immediately linked to the injury, necessarily must be determined by the jury. The jury must determine whether the facts constitute a succession of events, so linked together that they become a natural whole; or whether the chain of events is so broken that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause,—the negligence of the defendant."

But where the matter for determination is peculiarly one of medical science, and concerns the origin, progress, development, and operation of diseases, and their ultimate effects and consequences, and the purpose is to charge one person for causing the death of another, the plaintiff is bound to produce the testimony of experts, and to establish with reasonable certainty that the natural and probable consequence of the defendant's wrongful act or neglect was to produce the resultant death. Where the question is one of technical knowledge or opinion, the jury is not at liberty to base its conclusions upon mere conjecture or personal opinion, and to disregard the preponderating evidence of the experts.

I have thus far called attention to the principles upon which the questions here presented are to be decided, with illustrations of their application to particular cases, and this brings me to a discussion of the evidence, and an application of those principles to the case at bar. The substance of the important portions of Dr. Buckley's testimony which it is necessary to quote is as follows:

"I cannot state where she located the pain in her back. I don't remember. Intermittent fever appeared within a few days after the injury. She gradually failed; complained of pain in the back, limbs, and head. I think she received injury to the spinal column. An inflammation set up on the coverings of the spinal cord, was slow in progress, and continuous, causing these pains and affecting the stomach and brain. All these symptoms were sequelæ of this spinal irritation. She had an acute attack of vomiting. The stomach becomes inflamed. We don't know that; that is our opinion. We have got to make that out by post mortem examination. The excessive vomiting was the immediate cause of her death. We do not attribute that to an inflamed condition of the stomach. It can come from a great many causes. She had gastritis, and that would be an adequate cause for her vomiting. Gastritis would follow the indigestion of food that was nauseous. It would all depend whether the food was agreeable to a weak stomach. We believed these conditions of the stomach were produced by inflammation set up in the spinal cord, by the inflammation she had affecting the brain, and that made its influence felt upon the nervous system, and that indigestion of food and this attack of gastritis were brought on by this trouble. I attribute this attack of gastritis as the result of the general condition of her nervous system. Assuming that I am right in the diagnosis of the case, which is, of course, open to question, you can have all this train of symptoms following an injury of this kind, as a result of the injury to the spinal cord. This gastritis I attribute to all these conditions I have enumerated; the combination, as a result of the whole, and not a result of any particular portion of them. A diagnosis of inflammation of the spinal cord with the accompanying symptoms—lesions—can only be posi-

tively made by an autopsy. I base my opinion from the fact that she received the injury in the manner that she did, and the accompanying symptoms that followed."

And yet, notwithstanding the supposed spinal injury, and its serious effects, he says, in the consultation with Dr. Lee on February 5, 1895:

"I do not know as we would discuss spinal symptoms. Don't remember that the subject of injury to the spine was discussed."

Being questioned as to a conversation with Shedd, defendants' employé, he answered:

"I don't remember that I said anything to the effect that I attributed the attack of gastritis to the intermittent fever. It was not a fact. I do not know whether or not I said that the attack of gastritis was an outgrowth of the fever. I do not remember whether or not I said that I would not swear that the fall was the direct cause of her death."

It was largely upon evidence of this vague and indefinite character that the jurors based their individual opinions, in opposition to the testimony of the defendants' expert witnesses, and arrived at the conclusion that as a matter of fact the injury was the proximate cause of death, irrespective of the operation of supervening causes or agencies, not attributable to the defendants. It will be observed that the witness Dr. Buckley fails to state that any impure matter from the abscess was, in fact, absorbed by the system, producing a septic fever. See Thompson v. Railway Co., 11 App. Div. 182, 42 N. Y. Supp. 896. That would be a development from the wound itself. By intermittent fever I understand the witness to mean "malarial." I fail to discover any statement that gastritis is even a frequent or an expected consequence of such an injury, or that death may be reasonably anticipated as the result of it. Dr. Herriman testified that the cause of intermittent fever is malarial poisoning,—a poison which is now subsisted by a germ, which is conveyed by the atmosphere or in water, and received into the system through the atmosphere, or taken into the stomach; that a physical injury of any character cannot be a cause of intermittent fever; and that an enfeebled physical condition could not make one more susceptible to an attack of that disease.

"Assuming that a healthy and strong woman, sixty years of age, were to be tripped upon a stone sidewalk, and fell forward on her face and body, I do not think that gastritis would be a natural or probable result of such a fall. Acute gastritis appearing about sixteen months after such a fall could not be the result of it."

On cross-examination he said that he would hardly regard this intermittent fever as a secondary effect of any injury, or occasioned by blood poisoning from absorption of impure matter from a wound or diseased member.

"You would get chills and fever, but you would not get a distinct type of intermittent fever; not technically speaking. You get a septic fever, which is more likely to be continuous when it has its origin in blood poisoning, from the absorption of impure matter into the system; from a sore, for instance. Intermittent fever—fever and ague—is never caused by a physical injury. A depressed physical condition makes one yield more readily to the effects of a disease, but it does not always make one more susceptible to taking on inflammation of any kind. I would expect bacteria to produce an inflammation in a healthy person with as much certainty as it would produce such an effect upon a person in a perfectly

demoralized physical condition. One in a weakened condition would succumb more readily to the progress of the disease than a well person."

In regard to acute gastritis he says that a person's liability to it is, to some extent, dependent upon the condition of the vitality and general health. One who has undergone a long period of illness, depressed nervous disease, accompanied by wasting, severe emaciation, is more liable to an attack than one who has not been so reduced; that improper food, or food improperly prepared, put into the stomach of such a person, may cause gastritis.

"Acute gastritis may come on at any time, fall or not, in connection with eating ordinary food, if the stomach of the patient has been made useless for the purpose of taking care of such food by protracted disease. And the combined effect of the weakened condition and the natural food for a well person would be an acute gastritis as the result. Food that is difficult of digestion, or that requires a long time for digestion, might produce gastritis."

Dr. Angell said that intermittent fever is considered a malarial fever, and is generally supposed to be due to a germ which is outside of the body, floating in the atmosphere, and which is more commonly found in low places or swamp lands; that it is an infectious disease. "I do not believe that a reduced physical condition makes one more susceptible to its attack;" that acute gastritis is not a natural or probable result of the decedent's fall; that it would be a very unusual result; that acute gastritis, sixteen months after such a fall, could not be the result of it. On cross-examination he stated:

"I should attribute a sympathetic irritation of the stomach, caused by the conditions of the knee, to the probable influence of absorption of morbid material from the open wound, but not to any spinal root inflammation. Direct violence to the person is not the cause of gastritis. I should hardly regard acute gastritis as supervening upon a thoroughly demoralized, weakened, emaciated physical condition, the result of injuries to the spinal system or other parts of the body, or as one of the conditions which supervene on that condition from the reception of some food at the moment which the system has been too weak to take into the stomach. I should hardly regard that as a sufficient cause for an acute inflammation of the stomach, or gastritis. I should expect there had been some irritant taken into the stomach of a patient as described, or an extension from the inflammation from a neighboring organ, or from the development of an ulcer of the stomach. Putting indigestible food there, in connection with the septic condition of the patient where a running sore stopped, I should expect gastritis to be due to those circumstances, because the septic condition produces a low inflammation, if any, and not acute. A fall of the character described would not produce any spinal injury in the nature of any inflammation. The only injury that would be possible would be a wrench of the spinal column, but it is so protected that it is a very difficult matter to produce any disease there. Inflammation or irritation of the meninges rarely ever follows a wrench of the spinal column."

No person of common knowledge would suppose that a simple injury to and inflammation of the knee, resulting in a running sore or abscess, would, after the lapse of 16 months, cause or produce death from inflammation of the stomach. No one would suppose that acute gastritis, or inflammation of the stomach, would be the natural, probable, or expected consequence of an injury of that character, or that the resultant death could be attributed to it as a proximate and efficient cause. That would be taken to be an extraordinary sequence, and two men of science testify that it would be a very unusual result. Nor does Dr. Buckley, the de-

cedent's physician, state that an attack of gastritis is a frequent or expected result of septic fever, consequent upon the absorption of the impure matter from the abscess, or of malarial fever.

The defendants are responsible for the injury to the knee and the direct or proximate consequences that usually or frequently may be expected to flow therefrom; but it does not seem reasonable or just to charge them with responsibility for the death of this woman, happening 16 months thereafter, and resulting from an acute attack of vomiting, as the immediate cause thereof. If the attack of gastritis was a concomitant of the intermittent fever, or a consequence of it, or if the existence of the malarial poison in the system rendered her the more subject to the attack, I am unable to perceive how the defendants can be charged with the result. If the fever produced a weakening of the stomach, increasing its sensitiveness, and indigestible food caused the vomiting, and that resulted in death, defendants ought not to be held responsible for that. The connection between the injury and the death is left in doubt and uncertainty. It is by no means clear that the gastritis was in any way a development of the injury itself, or that death is an event that may reasonably be anticipated as a result of such an injury. Nor is it fairly evident as a fact (and not simply an opinion) that there was a spinal injury; or, if so, the particular nature or extent. And, even though spinal irritation affected the brain, nerves, and stomach, it is not apparent that death would have resulted without the aid of malarial fever. Upon the whole evidence, it is a very difficult undertaking for any one to base a reasonable conclusion and infer the fact that the defendants caused the extinction of life. Being submitted to the jury for its opinion, it solved all doubts by giving the plaintiff the benefit of them.

Assuming that the gastritis was a natural or probable consequence of the injury, the defendants are not responsible for the resultant death, if the existence of the malarial poison in the system was also a contributory or efficient cause, without which it probably would not have been occasioned. It is just as probable from the evidence presented that the malarial fever was a contributing, if not a predominating, cause, operating efficiently to produce the result, as that it was not. If the damages claimed were occasioned by two causes, for one of which the defendants are responsible, and for the other of which they are not, the plaintiff must fail if his evidence does not show that the damages were produced by the former cause; and he must fail also if it be just as probable that they were caused by the one as by the other, as the plaintiff must make out his case by the preponderance of evidence. The jury must not be left to mere conjecture, and a bare possibility that the damage was caused in consequence of the negligence of defendants is not sufficient. Searles v. Railway Co., 101 N. Y. 661, 5 N. E. 66; Taylor v. City of Yonkers, 105 N. Y. 209, 11 N. E. 642. And it is not in the interest of justice to extend the field of speculation in jury trials beyond its present limit. Butler v. Railroad Co., 143 N. Y. 422, 38 N. E. 454. A man's responsibility for the consequences of his negligence must end somewhere. There is a possibility of

carrying an admitted principle too far. It may be extended so as to reach the reductio ad absurdum so far as applies to the practical business of life. Hoag v. Railroad Co., 85 Pa. St. 298.

Now, it becomes a matter of surmise or conjecture, that death would probably have resulted from the stomach complaint, even though there had existed no malarial poison in her system, or that it resulted in spite of the poison. The existence of the poison un-doubtedly weakened her system, and her power of resistance to the attack of gastritis, and made her the more readily to succumb. There is a reasonable probability, therefore, that the attack would not have resulted fatally but for the poison; in other words, that death would not have ensued but for an intervening cause, for which the defendants are in no way responsible. Is there any "reasonable certainty" here that defendants' wrongful act was the actual cause "by which" the deceased came to her death? Code, § 1902. Is not the evidence insufficient to warrant a finding as a fact that the defendants caused her death? Giving all due weight and effect to the testimony of decedent's physician, it yet fails to establish the fact that the cause and consequences for which defendants may be held responsible were sufficient and adequate, without the inter-vention and operation of supervening causes for which they are not responsible, to result in the extinction of life; and especially so in view of the countervailing testimony of several expert wit-nesses. Of course, the introduction of malarial germs into the sys-tem was not a consequence of the injury sustained, and defendants cannot be charged with their operation or effect. The malarial fever did not originate in or flow from the injury, nor was it caused or produced by it, or developed from it as a consequence. The de-fendants are only liable for the reasonable and probable consequen-ces of their own negligence, and not for intervening causes, subse-quent to the injury. There was no continuation of the causation by which the result is linked to the cause by an unbroken chain of events, each one of which is the natural and probable result of such cause. Here there was an intermediate efficient cause not "put in motion" by the defendants, and not such a consequence as, in the ordinary course of things, would flow from the act. And it is not apparent that the gastritis was of itself sufficient to produce death, without the operation of another efficient cause. There was no natural and continuous sequence, unbroken by any new cause, to produce the event, and without which that event would not have occurred. There was an efficient and independent cause, operating between the result and the injury, and unconnected with the primary cause; and the inference is legitimate that it had a predominating influence in producing the result, and there is no evidence or cir-cumstance repelling the idea that it had. The wrongdoer may not be chargeable for the results of a concurrence of accidental and varying circumstances over which he has no control. If, after the cause in question has been in operation, some independent force comes in, and produces an injury not shown to be its natural or probable effect, the author of the cause is not responsible. In other words, it does not appear that, in the opinion of plaintiff's expert

witness, the acute gastritis would have been adequate to produce death, if the malarial fever had not supervened. Non constat, but that the poison in the system came in as a new and independent agency, and produced the result, in the absence of which the inflammation of the stomach would not probably have resulted fatally. If that be true, are the defendants liable for the operation of the poison? Assuming that the defendants are responsible for the ill condition of the decedent's health, are they to be chargeable, during the period prescribed by the statute of limitations, as insurers of her life against all diseases which may be incurred, whether arising by development or as a consequence of the injury, or created by independent causes? Are they to be held responsible for the action of microscopic existences in the atmosphere and in the water? To this result, I conceive, the decision of the court upon the evidence as here presented for review seems to lead.

In the absence of evidence establishing to a reasonable certainty that death was the natural and probable consequence of the injury, or that the injury was the direct or proximate cause of it, and that the newly-acquired disease, created by other and entirely different causes, could have had no material operation or effect in producing the fatal result, it seems to me it would be an unwarrantable extension of this beneficent statute, and, it may be, an injustice to these defendants, to give it application to such a case. I am unable to perceive the legal sufficiency of the evidence for the consideration of the jury. On the contrary, it appears to leave the plaintiff's case in a state of considerable doubt and uncertainty, depending rather more upon conjectures, speculations, and probabilities than facts or legitimate inferences, and it is altogether unsatisfactory and unconvincing. The opinion of the jury involves a matter of medical science, and concerns the causes, operation, and effects of diseases incident to the human system; and its opinion is necessarily supposed to be based to a large extent upon the opinion of experts in that science, but the opinion of the jury and that of the experts hardly coincide. The jury's conclusion is opposed to the testimony of defendants' medical witnesses, and is hardly warranted by anything in the testimony of the decedent's physician. The jury was, in effect, instructed to trace the result through various stages of causation, and follow back through intervening causes and conditions to the supposed primary cause. It was left to the jury to discover the primary cause, and to establish the connection between the immediate cause of death and the injury; and that was a feat that the medical experts were unable to accomplish. The jury has brought the knee and the stomach in close juxtaposition, and has discovered an intimate connection between them. Supposition and conjecture are made to stand for proof, and vagueness of statement substituted for certainty. It is held that, unless the result can be traced back to the negligent act, without reference to the intervening and contributing causes, then the first is not the proximate cause. Read v. Nichols, 118 N. Y. 224, 23 N. E. 468. And this is what the jury has undertaken to do without the aid of reasonable and adequate proof. The

fact that a party is shown to have been negligent in certain particulars, resulting in injurious consequences, does not make him liable for a result produced by conditions to which his negligence did not contribute. And yet, under the instructions of the court, and the refusal to instruct, the jury was at liberty to find against the evident probability that the intermittent fever was an efficient, if not a predominating, cause in rendering the gastritis a serious disease, without which death would not, probably, have ensued. Considering the long time which had elapsed since the injury, and all the "ills that flesh is heir to," and the vicissitudes incident to old age, clear proof should be required in such cases, when it is attempted to charge one man for the death of another, resulting, not as a direct effect of the blow or injury, but from subsequent supervening diseases. When it is claimed that a man caused or produced the death of another, let him who asserts it come forward and prove it to a reasonable certainty. If he cannot, from the nature and difficulty of the matter, establish it, he must fail. Obviously, death is not the usual, ordinary, or frequent result of a fall of such a character. It is not an expected or anticipated consequence. I do not believe it was fairly within the contemplation of the author of this statute, nor is it justified by any principle of policy or of justice, that the liability of one person for the death of another from disease, and not as a direct consequence of the injury inflicted, should be left to mere inference, supposition, or conjecture. In other jurisdictions the courts have, in some instances, extended and applied the principle of liability to extreme limits, and embraced within its scope and operation far-reaching consequences. A safer precedent to follow, and one more just in its application, in a juridical sense, to cases of this peculiar character, is that made by the supreme court of Pennsylvania in the case of Dickson v. Hollister, supra.

If it be objected that the principle of liability appears to be stated in terms too restrictive, it is nevertheless an authority against the allowance of a recovery upon such evidence as has been presented here. Accidents of this character happen every day, yet no one expects or anticipates fatal consequences, since it is a very unusual and infrequent result. Because the wrongdoer is liable for the impairment of health and consequent suffering, it does not follow that he should be held responsible for the fatal result of an acute attack of vomiting, consequent upon eating improper or indigestible food, concomitant with malarial poisoning. His liability must end somewhere, and it ought to stop before such a result is reached. Only direct results should be regarded, and clear proof should be required in cases of this character, where death ensues, not as a consequence of the injury, but by the operation of a supervening disease or a complication of diseases. This is the safe principle to adopt. If the proximate cause is to be ascertained by devious ways and along uncertain paths, a recovery should not be permitted. For all the consequences that are reasonably certain to ensue, damages may be awarded in the lifetime of the party. Currier v. Henderson, 85 Hun, 300–305, 32 N. Y.

Supp. 953.   Damages produced by other agencies than those causing the injury, or even by agencies remotely connected with those causing the injury, ought not to be awarded; but only where the injury flows from the wrongful act as the natural concomitant, or as the direct result thereof.   Where speculation or conjecture has to be resorted to for the purpose of determining whether the injury results from the wrongful act, or from some other, then the rule of law excludes the allowance of damages therefor.   Railroad Co. v. Birney, 71 Ill. 391; Magilton v. Railroad Co., 11 App. Div. 373, 42 N. Y. Supp. 231.   The result must be the natural and probable consequence of the accident, and not of casual or unexpected causes intervening.   Whether the death did result from the injury must, in the very nature of things, be a mere conjecture.   Admitting, for the sake of argument, that it did so result in this particular case, it can only mean that the jury conjectured rightly.   Into such a wide field of conjecture the jury should not be permitted to wander.   Its finding upon this point seems to be clearly against the evidence.   Upon the unsatisfactory, unsubstantial, and unreliable theories or speculations of one of the physicians it based its finding.   The instructions of the court virtually authorized the jury to go into the regions of conjecture, and to undertake to form an opinion on matters entirely beyond its skill, and concerning which it did not have the information necessary for the formation of an intelligent opinion.   I am of the opinion that there was no evidence in the case on which the jury was authorized to find that the disease of which the intestate died was occasioned by, or connected with, the injury received from the fall.   Such mere speculative possibilities, unsustained by proof, should not be permitted to become the basis of awarding heavy damages, out of all proportion to the character of the wrongful act, or of the nature of the injury occasioned.

The judgment and order should be reversed, and a new trial ordered, with costs to abide the event.